Filed 10/20/14  In re Vanessa V. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re VANESSA V. et al., Persons Coming Under the Juvenile Court Law. | B252523 (Los Angeles County Super. Ct. No. CK97867) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MIRIAM H., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Tony L. Richardson, Judge.  Affirmed in part; dismissed as moot in part.

M. Elizabeth Handy, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

_____

## *INTRODUCTION*

In this appeal, Miriam H. appeals from the dependency court's orders declaring her four minor children dependents and removing them from her custody pursuant to Welfare and Institutions Code sections 300 and 361.  We affirm the court's jurisdictional order but dismiss as moot Miriam's challenges to the dependency court's disposition and visitation orders.

## *FACTUAL AND PROCEDURAL SUMMARY*

In November 2012, the Los Angeles County Department of Children and Family Services (Department) received a referral alleging physical and emotional abuse and general neglect of Miriam H.'s children.  Miriam, Raul V. and Alejandro H. had attended a family court mediation the week before, and at that time, Miriam disclosed her children's exposure to Alejandro's domestic violence against her as well as his substance abuse in their presence.

According to the Department's detention report, Miriam and Raul had four minor children at the time:  Vanessa V. (then 16), Ver. V. (13), Val. V. (11) and J. H. (5).  Miriam and Raul had been married since 1992, and Raul was the biological father of the three older girls.  From 2005 through 2012, Alejandro rented garage space from Miriam and Raul, and throughout that time, Alejandro and Miriam had a sexual relationship.  In November, Alejandro told Raul he (Alejandro) was J.'s biological father, and this disclosure led to an altercation between Raul and Alejandro in which Miriam attempted to intervene.  Miriam also said Alejandro had beaten her on several occasions—in her children's presence—causing black eyes, swollen lips and bruises on her body, but she allowed him to stay and continued the affair despite the beatings because Alejandro was J.'s father.  She said she "would have to lie" to Raul and tell him that she fell or hit herself so he would not find out about the affair.  She said whenever she tried to end the relationship, Alejandro "would threaten to kill the entire family" so she had no choice but to remain in the relationship.

During the mediation, Alejandro had accused Miriam of using methamphetamine and cocaine. Miriam said Alejandro was a "heavy drug and alcohol user" throughout their relationship, his drugs of choice were marijuana and crystal methamphetamine and he had offered her daughter Viviana (now an adult) crystal methamphetamine when she was younger. According to the reporting party, Alejandro had a "glassy look." Miriam denied she or Raul used drugs and agreed to a drug test.[1] Alejandro said he was off of work and taking medication due to a worker's compensation injury; he said Miriam was using him for money because he supported the entire family with his disability check. He said he lived in Miriam's garage and had had an affair with her, but problems with her began when the money ran out.

Despite the family's prior child welfare history, Miriam acknowledged she had never disclosed Alejandro's abuse, drug use or any other misconduct to the social worker before.[2] When the last social worker had asked why J. did not have the same last name as the other girls, Miriam said she had just decided to give J. her own last name.[3]

---

[1]    In December, the social worker received negative drug test results for both Miriam and Raul. Alejandro had failed to show up for two scheduled appointments and had not returned the social worker's calls despite messages left for him.

[2]    The Department had received nine prior child welfare referrals relating to this family from 2002 through 2012. Most recently, in June 2012, the Department had received a referral alleging neglect involving J., but it had been classified as unfounded.

In mid-August 2004, "allegations of emotional abuse and substantial risk" were investigated and "substantiated." According to the referral, Miriam was depressed and suicidal. That day, she was going to drink insect poison in an apparent suicide attempt, but Raul Jr. (then 13) had stopped her. The reporting party said her agency had been working with the family for years and said she would stay with the family until Raul got home from work that day. The reporting party said the children were dirty to a "level of neglect" and there were "a lot of stressors in the home, including marital issues." The caller was "very concerned about the well-being of the children and [their] mother." From August 2004 through May 2005, the family received voluntary family maintenance services until the family stabilized and the case was closed.

When she became pregnant with J., Miriam said, she was "nervous" because Raul had had a vasectomy years before and would know J. was not his child so Miriam and Alejandro came up with a story. Miriam told Raul that she had gone out to eat with a friend after work one day and was "raped by an unknown person" on the way home. Raul believed the story. Several months later, she said, a "random man was killed down the street" so Miriam and Alejandro decided to tell Raul that man was the one who had raped her. Raul believed that story too "up until the day of the fight at the family home where he found out the truth."

Miriam told the social worker she and Raul were about to get a divorce at one point but did not go through with it and were working on their differences for their children's sakes. She acknowledged she had been prescribed medication for depression but decided not to take it and went to church as a form of therapy.

Miriam also said, in 2011, Alejandro had taken her daughter Vanessa to a motel where he "asked her to smoke marijuana, watch pornography and try meth." Regarding Alejandro's arrest following this incident, Miriam said she "got the impression Vanessa was not necessarily telling the truth, and she and [Raul] decided to bail [Alejandro] out." Because she believed "the entire incident was a misunderstanding," she did what she could to help Alejandro, and he returned to the home and continued living in the garage. Miriam continued her affair with Alejandro but said she and Raul placed restrictions on

_____

In February 2006, it was reported that Miriam slept days and nights, and for two months, the home had been filthy, the refrigerator had no food and dirty clothes were piled up everywhere, but these allegations of general neglect were classified as unfounded.

Six other referrals (alleging neglect and, on one occasion, Miriam's physical abuse of Raul Jr.) were classified as either unfounded or inconclusive.

3     Although they are not related (or married to each other), Miriam and Alejandro happen to have the same last name.

Alejandro's entry and he was only allowed inside to take a shower. They did not press charges or pursue a court case.

In the social worker's assessment, the children were at "very high" risk of future neglect and emotional abuse given these circumstances. The Department acknowledged the family had successfully completed voluntary family maintenance in the past but recommended the children's detention from Miriam, Raul and Alejandro this time. The dependency court issued a removal order, and the children were taken into protective custody (in February 2013).

After conducting its initial investigation, including interviews of the children, Miriam, Raul and Alejandro, the Department filed a petition alleging Vanessa, Ver., Val. and J. had suffered or were at substantial risk of suffering physical harm and sexual abuse, citing violent altercations in the children's presence between Miriam and Alejandro and among Miriam, Alejandro and Raul; the incident in which Alejandro took Vanessa to a motel, gave her marijuana and forced her to watch pornography; Alejandro's substance abuse and Miriam and Raul's failure to protect the children by allowing Alejandro to reside in the family's home with unlimited access to the children. (Welf. & Inst. Code, § 300, subds. (a), (b), (d) & (j) [all further undesignated statutory references are to the Welfare and Institutions Code unless otherwise indicated].)

In its initial jurisdiction and disposition report, the Department noted physical and emotional abuse allegations had been sustained against Alejandro in 2004; a woman and her daughter had to move to a domestic violence shelter due to Alejandro's domestic abuse. In addition, Alejandro was identified in another dependency petition alleging violent altercations, including an incident in which the father brandished a gun at the mother and her male companion (Alejandro); the children in that case had been detained because of their mother's substance abuse.

When Vanessa was interviewed, she referred to Alejandro as her "uncle" but clarified she was not related to him at all. Regarding the 2011 incident Miriam had

5

described, Vanessa said Alejandro woke her up early that day—around 7:00 a.m. on a weekend—while her parents were sleeping and asked her to come with him to the hospital because of an injury he had. They went to the hospital, but Alejandro did not want to wait so they left. Vanessa said he took out "weed" while they were driving, and they "ended up at a motel. I was panicking; why here?" Alejandro was "doing . . . crystal [methamphetamine]. . . . He wanted me to do it but I said no." He turned on the television and scanned the channels until "porn came o[n]." Then, Vanessa said, "He laid on the bed and I got up. His thing (penis) popped out and he asked me, 'Aren't you curious?' I was sitting in a chair and he was laying on the bed." At that point, Vanessa said she asked him to buy her some chips, locked the door, washed her face and "went running." She said she washed her face to wake herself up because she had "t[a]k[en] two to three hits of marijuana." She called her sister Viviana, and Viviana called their parents. She said Alejandro was arrested but then released and "came back to live in the garage portion of the home." Vanessa said Alejandro told her it was a "misunderstanding," Vanessa and her sisters were "like [his] daughters" and he "would never do anything bad to [her]."

Vanessa also said her mother and Alejandro had "had a relationship behind her father's back for six years and the only one who was not aware of it was her father" (Raul). She said Alejandro and Miriam would take Vanessa and her sisters out to the movies and to eat while her father was at work. Vanessa said she "found out [about J.'s paternity] when J. was small. It was common sense . . . . Nobody told me anything."

Vanessa, Ver., Val. and J. had all witnessed Alejandro's abuse of their mother.

When the social worker spoke with Viviana (almost 18), she said Alejandro used drugs in his room and would smoke marijuana in front of the children; he continued to harass Miriam and Raul Jr. at their place of employment and sometimes outside of the family home.

6

When Miriam was interviewed again and asked why she continued to allow Alejandro to interact with her children, she said, "He said he would win a lawsuit and give us money to buy a house. He could work but he was fraudulently trying to claim disability." She said she just wanted him to be near "because of his child" but not to say anything. She said the domestic violence continued during the time Miriam was pregnant with J. At the end of their relationship, Miriam reported, Alejandro physically abused J. and disciplined her by hitting her. Miriam said Alejandro never helped her out financially for J. but now demanded to have J. visit with him.

Regarding the November 2012 altercation, Miriam said Alejandro "and other [B]arrio Highland Park gang members jumped" Raul. One of them was the husband of Alejandro's adult daughter, the same girl who had to live with her mother at a shelter several years before because of Alejandro's domestic abuse. She said Alejandro's pregnant 21-year-old girlfriend would sell him drugs and had an "open case for drugs." When she got involved, Miriam said, Alejandro hit her on the head, side of the mouth and cheek and pulled her hair. She and Raul were "defending [them]selves."

When the investigator interviewed Raul regarding the altercation, he said Alejandro did not live with the family at that time; "[h]e lived in the [apartment] building in the laundry room . . . ." According to Raul, Alejandro was never alone with the children and never lived with them.

The investigator reported Miriam was "making active efforts [to] facilitate[e] placement with relatives in the family home" but expressed concern that she was acting "hastily" and was minimizing the importance of guidelines for placement, including submission to a "live scan" for relatives who would have significant contact with the children. As an example, Miriam had said her daughter-in-law would live at the family home, her adult son would move out so he would not have to live scan, and her mother (who traveled to Mexico to care for her own father) would live there, but her father (her mother's husband) would not (as he had not submitted to a live scan). Also, when the

7

investigator requested a live scan for Miriam's sister as Miriam said her sister would be transporting the children, Miriam then said her sister would not transport the children.

In the investigator's assessment, "this family has a multitude of factors that have now culminated in the current turmoil." Miriam and Raul both said they had overcome issues stemming from Miriam's infidelity resulting in J.'s birth, and neither saw conjoint counseling as important, but Miriam admitted she had bailed Alejandro out and had not told Raul. There were "serious concerns" regarding Alejandro's documented history of domestic violence and substance abuse and further concern regarding Miriam's "choices and impulse control," given her involvement with Alejandro despite full knowledge regarding his drug use, domestic violence history and prior involvement with the Department. She said Alejandro had "refrained from his vices" during their relationship, but available information was to the contrary, and Miriam had allowed Vanessa and perhaps the other children to be with Alejandro without supervision while ignoring facts suggesting imminent risk. "Considering that the family has nine prior referrals, there is concern that there is more turmoil with the family dynamics beyond the presenting problem." The Department requested that Vanessa, Ver., Val. and J. be declared dependents and removed from their parents' care.

In mid-March, the investigator interviewed Alejandro. He said he paid the bills in the house. He blamed Vanessa for the motel incident. Asked about his residence, Alejandro said the "contract [at the home address] is under me and Miriam[.] I never just rented a garage. None of the paperwork says [Raul]." Regarding sleeping arrangements, Alejandro said, "I slept in a room with the girls on the floor. Not every night, maybe three times a week."

In May, paternity testing confirmed Alejandro was J.'s biological father.

In June, the children were placed with their adult brother Raul Jr., his wife and another extended family member (Maria P.) in the family's apartment.

8

At the July hearing, Alejandro argued the dependency court should find him to be J.'s presumed father as he was J.'s biological father and he, Miriam, Raul, J. and her sisters had been "living together." The matter was continued to October for a contested jurisdiction and disposition hearing.

For the October hearing, Miriam reported she and Raul were participating in marriage classes at their church. She and Raul submitted their marriage certificate to demonstrate they were married in 1992 in Mexico. In addition, Miriam had obtained certificates of participation or completion for: a 12-week parenting class dated May 8, 2013; an 8-week parent support group dated August 14, 2013; a domestic violence education class dated June 28, 2013; a life skills parenting class dated September 11, 2013; and a 12-hour Magnolia Community Initiative Ambassador community dialogue program dated September 27, 2013. Raul had certificates of participation for: 9 parenting classes dated May 8, 2013; an 8-week parent support group dated August 14, 2013; and a 12-hour Magnolia Community Initiative Ambassador program dated September 27, 2013.

At the adjudication hearing in October, the dependency court found Raul to be J.'s presumed father. The court admitted the Department's reports into evidence. In addition, Miriam presented a letter dated September 11, 2013, stating she had been receiving services from the YWCA of Glendale's Domestic Violence Program as of April 8, 2013, and had completed 12 sessions of domestic violence education, individual therapy, parenting and emotional management courses. Raul offered a certificate dated October 2, 2013, stating he had completed a 10-week parenting class, and a letter from a church dated October 19, 2013, stating he and Miriam had attended seven marriage counseling sessions during September and October.

Raul testified Alejandro did not "live with" his family; he lived in the laundry room of their apartment building and, when he (Alejandro) was displaced from that location, he moved to Raul and Miriam's "carport." Regarding the motel incident involving Vanessa and Alejandro, he said he tried to find out what had happened but she

9

could not tell him "because she was crying so much." "Up to now . . . she keeps telling me that nothing really took place. That he went in and sat on the bed and asked her to come and sit by his side. [¶] That he started to play porno pictures, films." He told his children to stay inside after that and the adults rotated staying with them. "[T]o tell you the truth, I was so upset by everything that was going on that I didn't get too involved in this whole thing." Raul said he had learned how to deal with children in parenting classes, and marriage counseling was helpful and he would continue participating in it, but he and Miriam had not addressed sexual abuse in any of their programs.

According to Miriam's testimony, she bailed Alejandro out of jail, but she used his money (from his "other daughter"), not her own. Asked what she did to make sure the children were protected after the motel incident, she said "[t]hey were not to be alone in any manner." Before the incident with Vanessa, Miriam testified, Alejandro "did go in" but after that, "he was not able to go inside the house." Miriam said Alejandro was living in the laundry room across from her apartment at the time of the fight. She did not seek a restraining order at that time; it was "after there was violence" and he "didn't come through with what he said [about moving]."

According to her testimony, Alejandro threatened her "all the time"—saying he was "going to tell [Raul] the truth" and that "he could take my girl." She said the temporary restraining order she had obtained after the fight had ended because of a problem with confirming proper service and receipt. According to Miriam, Alejandro did not know where she lived because she "moved far away and I didn't inform anybody about where I was going to move." Miriam initially denied she allowed Alejandro to use the bathroom in the apartment after the 2011 motel incident with Vanessa, but then said, "[W]ell, to be honest, he was the one that would fix the bathroom or anything. Whenever something broke down, he was the one in charge of fixing things at the apartment building. That was by consent." She then said she had allowed him into the apartment "on a few occasions"—"only when [she] was present."

10

The dependency court sustained the petition as amended to identify Alejandro as J.'s biological father and to delete Raul from some but not all of the counts as follows:[4]

Paragraphs "a-1" and "b-4" state as follows:  "[Miriam and Alejandro] have a history of engaging in violent altercations in the presence of the children.  On prior occasions, [Alejandro] struck [Miriam]'s face and body, inflicting bruises to [her] eyes, swelling to [her] lips and bruises and marks to [her] body in the presence of the children.  On prior occasions, [Alejandro] pushed [Miriam] in the presence of the child Ver.  On prior occasions, [Alejandro] threatened to kill [Miriam] and the family.  [Miriam] failed to protect the children in that [she] allowed [Alejandro] to reside in the children's home and have unlimited access to the children.  Such violent conduct on the part of [Alejandro] against [Miriam] and [Miriam]'s failure to protect the children endangers the children's physical health and safety and places the children at risk of physical harm[,] damage, danger and failure to protect."

Paragraphs "a-2" and "b-5" specify:  "In November 2012, [Raul and Alejandro] engaged in a violent altercation in which both fathers struck each other in the presence of the children.  Such violent conduct . . . places the children at risk . . . ."

Paragraphs "b-1" and "j-1" state:  "On a prior occasion in 2011, [Alejandro] took the child Vanessa to a motel and gave [her] marijuana to ingest.  [Miriam] was aware of [Alejandro's] conduct against the child and failed to protect [her] by allowing [Alejandro] to reside in the children's home and to have unlimited access to the child Vanessa.  Such a detrimental and endangering situation established for [Vanessa and Miriam's failure to protect place Vanessa and her siblings at risk]."

Paragraphs "b-2," "d-1," and "j-2" provide:  "On a prior occasion in 2011, [Alejandro] sexually abused [Vanessa] by forcing [her] to view pornographic videos.

---

[4]    During argument as to ongoing risk, the dependency court noted Alejandro was a party to the proceedings which meant he received paperwork listing Miriam's and Raul's addresses, and there was no indication they had taken any steps to keep their addresses confidential from him.

[Miriam] was aware of [Alejandro]'s sexual abuse of [Vanessa] and failed to protect the child by allowing [him] to reside in the children's home and to have unlimited access to the child Vanessa. Such sexual abuse . . . and [Miriam]'s failure to protect [Vanessa places Vanessa and her siblings at risk]."

Finally, paragraph "b-3" states: "[Alejandro] has a history of substance abuse and is a current abuser of cocaine, methamphetamine, alcohol and marijuana, which renders [him] incapable of providing regular care for the children. On prior occasions [in] 2012 and 2013, [Alejandro] possessed, used and was under the influence of illicit drugs in the children's home while the children were in [his] care and supervision. On a prior occasion in 2011, [Alejandro] possessed, used and was under the influence of illicit drugs while the child Vanessa was in [his] care. [Miriam and Raul] were aware of [Alejandro]'s substance abuse and failed to protect the children by allowing [Alejandro] to reside in the children's home and to have unlimited access to the children. [Alejandro]'s substance abuse and [Miriam's and Raul's] failure to protect the children [places them at risk]."

Turning to disposition, the dependency court stated: "I've thought long and hard about this . . . ." Factoring in both Miriam's and Raul's testimony and crediting them for participating in programs, considering the exhibits and listening to the arguments, the court rejected the request for an order releasing the children to Miriam and Raul with conditions in place: "I am not satisfied that even with such conditions in place [Miriam] and [Raul] get it. I have heard their testimony. I am not convinced that despite some of the programs [they] participated in that they really do get it." "[T]he reality is this— either this [Alejandro] has this ungodly effect on [Miriam] and [Raul] or he is as manipulative and [Miriam] and [Raul] are as helpless as they can be with respect to the impact he's had on them. [¶] [Miriam] and [Raul] ha[ve] to have a deeper appreciation of the significance of matters." The court found "troubling" the fact Miriam and Raul said the first time they heard certain details of what had happened to Vanessa was in

12

court.  The court found Vanessa had been sexually abused and Miriam and Raul should have been aware of and dealt with this fact.   Despite their participation in programs, the dependency court determined there had been a "palpable lack of progress in [Miriam] and [Raul] addressing the issues that ha[d] brought them before the court and that needed to be addressed going forward."

The dependency court ordered the children removed from Miriam's and Raul's custody, with reunification services and monitored visitation at a minimum of three times per week and three hours per visit for both Miriam and Raul.

Miriam appeals.[5]

## DISCUSSION

**Standard of Review.**

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them.  "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193 [60 Cal. Rptr. 2d 315].)  "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.  [Citations.]  '"[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find

---

[5]     We requested and have received the subsequent minute orders in this case. Pursuant to Evidence Code sections 452, subdivision (d), and 459, subdivision (a), we take judicial notice of the minute order dated April 22, 2014 (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1487, fn. 3), and note that on that date, the October 22, 2013 order for suitable placement was terminated, with Vanessa, Ver., Val. and J. ordered placed in the home of their parents Miriam and Raul under the Department's supervision.  The next review hearing is scheduled for October 21, 2014.

[that the order is appropriate].'" [Citation.]" (*In re Matthew S.* (1988) 201 Cal. App. 3d 315, 321 [247 Cal. Rptr. 100].).' (See *In re Angelia P.* (1981) 28 Cal.3d 908, 924 [171 Cal. Rptr. 637, 623 P.2d 198].).'" (*In re I. J.* (2013) 56 Cal.4th 766, 773.)

**A Single Count Suffices for Jurisdiction.**

"'"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*In re I.J., supra,* 56 Cal.4th 766, 773, citing *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451).

"For jurisdictional purposes, it is irrelevant which parent created those circumstances. A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established. (*In re Alexis H.*[(2005) 132 Cal.App.4th 11,] 16.) As a result, it is commonly said that a jurisdictional finding involving one parent is '"good against both. More accurately, the minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions of a dependent."' (*In re X.S.* (2010) 190 Cal.App.4th 1154, 1161 [119 Cal.Rptr.3d 153].) For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence. (E.g., *In re Alexis E.*[, *supra,*] 171 Cal.App.4th [at p.] 451 [90 Cal. Rptr. 3d 44] [addressing remaining findings only '[f]or [f]ather's benefit']; *In re Joshua G.*[ (2005)] 129 Cal.App.4th [189,] 202 [when a jurisdictional allegation involving one parent is found supported, it is 'irrelevant' whether remaining allegations [are supported]; *In re Shelley J.* (1998) 68 Cal.App.4th 322, 330 [79 Cal. Rptr. 2d 922] [declining to address remaining allegations after one allegation found supported]; *Randi R. v. Superior Court* (1998) 64 Cal.App.4th

14

67, 72 [74 Cal. Rptr. 2d 770] [same].)" (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.)

Miriam argues that substantial evidence does not support the dependency court's order declaring her daughters dependents under subdivisions (a), (b), (d) and (j) of section 300.[6] The thrust of her argument is that her relationship with Alejandro ended in 2012 so her children were not at risk of harm. We disagree.

As we noted in *In re J. K.* (2009) 174 Cal.App.4th 1426, 1433-1444:

"Section 300, subdivisions (a), (b) and (d) all provide, in pertinent part: 'Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court:

"'(a) *The child has suffered, or* there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. For the purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian which indicate the child is at risk of serious physical harm. For purposes of this subdivision, 'serious physical harm' does not include reasonable and age-appropriate spanking to the buttocks where there is no evidence of serious physical injury.

"'(b) *The child has suffered, or* there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter,

---

6 The petition was sustained pursuant to all four listed subdivisions as to Ver., Val. and J. As to Vanessa, the dependency petition was sustained as to subdivisions (a), (b) and (d), but not (j).

or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse. . . . The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness. [¶] . . . [¶]

"'(d) *The child has been sexually abused*, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse.' (§ 300, subds. (a), (b), (d), italics added.)"[7] (*In re J.K., supra,* 174 Cal.App.4th at p. 1434.)

**Substantial Evidence Supports Dependency Jurisdiction as to Vanessa Pursuant to Subdivision (d) of Section 300.**

Section 300, subdivision (d), in particular, specifies that a child may be declared a dependent when: "The child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse."

Miriam argues, "The evidence fails to show either of these prongs was supported under section 300, subdivision (d)." She says the "allegation does not refer to Vanessa as

---

[7] As we noted in *In re J.K., supra,* 174 Cal.App.4th 1426, however, "at least with respect to section 300, subdivision (b), prior abuse and harm may be sufficient to support the initial exercise of jurisdiction, but '[t]he child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness.' (Italics added.) We interpret this language to be consistent and in harmony with the first phrase of subdivision (b) and thus the use of the term 'continue' presupposes an initial exercise of jurisdiction either based on a prior incident of harm or a current or future risk."

16

the subject of the sexual conduct by Alejandro" and "does not specify the sexual conduct that gives rise to it falling within Penal [C]ode section 11[1]65.1 provisions."

As defined in Penal Code section 11165.1, "'sexual abuse'" includes child molestation under Penal Code section 647.6, which makes it a crime to annoy or molest any child under 18 years of age. (*In re Jordan R.* (2012) 205 Cal.App.4th 111, 135, citing *People v. Kongs* (1994) 30 Cal.App.4th 1741, 1749 ["'Annoy and molest' are synonymous and mean to disturb or irritate, especially by continued or repeated acts; to vex, to trouble; to irk; or to offend."].) As we noted in *In re R.C.* (2011) 196 Cal.App.4th 741, "No touching is required, but the statute requires conduct that would unhesitatingly irritate a normal person, and '"conduct "'motivated by an unnatural or abnormal sexual interest'" in the victim [citations].'" (*In re Karen R.* (2001) 95 Cal.App.4th 84, 89-90 [115 Cal.Rptr.2d 18]; see *People v. Shaw* (2009) 177 Cal.App.4th 92, 103 [99 Cal.Rptr.3d 112] ['there can be no *normal* sexual interest in any child and it is the interest in the child that is the focus of the statute's intent'].)" (*In re R.C.*, *supra*, 196 Cal.App.4th at p. 750.)

In this case, the dependency court found Vanessa to be a dependent child under subdivision (d) of section 300, based on substantial evidence she "*ha*[*d*] *been sexually abused*." (Italics added.) Given the evidence that Alejandro took 13-year-old Vanessa away from her home without her parents' knowledge under apparently false pretenses, gave her marijuana and offered her crystal methamphetamine, took her to a motel room where he put pornography on the television and exposed his penis to her, substantial evidence supports the dependency court's determination Vanessa was "annoy[ed] or molest[ed]" within the meaning of Penal Code section 647.6 and therefore "ha[d] been sexually abused" as defined in subdivision (d) of section 300. No more was required. (*In re Carlos T.* (2009) 174 Cal.App.4th 795, 804 ["Because there was substantial evidence to support the juvenile court's finding of jurisdiction over Carlos under the 'has been sexually abused' prong of subdivision (d), there is no need to discuss whether there was

17

sufficient evidence to support jurisdiction under the alternative 'substantial risk' of abuse prong of subdivision (d)"].)

We reject Miriam's argument Alejandro was not a member of Vanessa's household when the motel incident occurred (or thereafter).[8] Alejandro and Miriam had an ongoing sexual relationship from 2005 through 2012, and Alejandro was J.'s father. According to Miriam's statements as reported by the Department, despite the facts he repeatedly physically abused her in front of her children, heavily used multiple drugs in their presence and threatened to kill the family, she continued her relationship with Alejandro and "wanted him to be near because of his child." Alejandro said he slept on the floor with the girls about three times a week. When Raul was at work, Alejandro and Miriam spent time together with the children, taking them to movies and eating together as a family. Although Miriam and Raul later said Alejandro only lived in the laundry room or garage space, in earlier conversations with the Department, Miriam indicated Alejandro had "returned to the home" and she continued to allow him in the family home even after the motel incident—at least when Raul was not home. Perhaps most significantly, Alejandro was able to wake Vanessa up without her parents' knowledge and take her to a motel where the sexual abuse took place. Substantial evidence supports the conclusion Alejandro was a member of Vanessa's household for purposes of section 300, subdivision (d).

Moreover, Miriam fails to meaningfully address the fact this same evidence establishes Miriam's own persistent *failure to protect* Vanessa from Alejandro's conduct, further supporting the dependency court's exercise of jurisdiction over Vanessa. (*In re J.K., supra,* 174 Cal.App.4th at pp. 1439-1440 [father's sexual and physical abuse of

---

[8]    Again, section 300, subdivision (d), specifies that a child may be declared a dependent when: "The child has been sexually abused, or there is a substantial risk that the child will be sexually abused . . . , by his or her parent or guardian *or a member of his or her household* . . . ." (Italics added.)

18

minor "must be viewed in its proper context" which includes mother's "persistent failure to protect" the minor].) Miriam did not even acknowledge that Alejandro had sexually abused Vanessa. Instead, she considered Alejandro's sexual abuse of Vanessa a "misunderstanding"—believing Alejandro over her daughter. Instead of pressing charges against him, she bailed him out of jail without Raul's knowledge. Furthermore, although she claimed Alejandro was never inside the family's residence after the motel incident, she contradicted herself at the jurisdictional hearing, and she said she wanted Alejandro to be around his daughter J. Despite the evidence of Vanessa's considerable distress after the sexual abuse, Miriam made no attempt to get help for her daughter; instead she continued her relationship with Alejandro, who blamed Vanessa for what had occurred. Despite the Department's ongoing involvement with the family, Miriam never disclosed Alejandro's sexual abuse of Vanessa (or the children's ongoing exposure to Alejandro's physical abuse of their mother as well as his substance abuse). It was only after the November 2012 incident when Alejandro told Raul that J. was his child and demanded to see her that all of these circumstances were revealed. On this record, substantial evidence supports the dependency court's exercise of jurisdiction over Vanessa (*Ibid.*)

**Substantial Evidence Supports the Dependency Court's Exercise of Jurisdiction over Ver., Val. and J. under Subdivision (j) of Section 300.**

The Department alleged Vanessa's sisters—Ver., Val. and J. come within subdivisions (a), (b), (d) and (j) of section 300. Again, however, a reviewing court properly affirms a dependency court's finding of jurisdiction over a minor if any one of the statutory bases for jurisdiction enumerated in the petition is supported by substantial evidence and need not consider whether the other alleged statutory grounds for jurisdiction are supported by the evidence. (*In re I.J., supra,* 56 Cal.4th at p. 773, citation omitted.)

As our Supreme Court explained in *In re I.J., supra,* 56 Cal.4th 766, "Subdivision (j) applies if (1) the child's sibling has been abused or neglected as defined in specified

other subdivisions and (2) there is a substantial risk that the child will be abused or neglected as defined in those subdivisions.  (§ 300, subd. (j).)" (*Id.* at p. 774.)  Here, for the reasons addressed in the preceding section, Vanessa was sexually abused as defined in subdivision (d) (*In re Carlos T., supra,* 174 Cal.App.4th at p. 804) "[s]o the first requirement is met." (*In re I.J., supra,* 56 Cal.4th at p. 774.)

Turning to the second requirement, as the *I.J.* court stated, "'[S]ubdivision (j) was intended to expand the grounds for the exercise of jurisdiction as to children whose sibling has been abused or neglected as defined in section 300, subdivision (a), (b), (d), (e), or (i).  Subdivision (j) does not state that its application is limited to the risk that the child will be abused or neglected as defined in the same subdivision that describes the abuse or neglect of the sibling.  Rather, subdivision (j) directs the trial court to consider whether there is a substantial risk that the child will be harmed under subdivision (a), (b), (d), (e) or (i) of section 300, notwithstanding which of those subdivisions describes the child's sibling.'  [Citation.]

"Unlike the other subdivisions, subdivision (j) includes a list of factors for the court to consider: 'The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child.' (§ 300, subd. (j).)  'The "nature of the abuse or neglect of the sibling" is only one of many factors that the court is to consider in assessing whether the child is at risk of abuse or neglect in the family home.  Subdivision (j) thus allows the court to take into consideration factors that might not be determinative if the court were adjudicating a petition filed directly under one of those subdivisions.  [¶] The broad language of subdivision (j) clearly indicates that the trial court is to consider the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm, within the meaning of any of the subdivisions enumerated in

20

subdivision (j). The provision thus accords the trial court greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than the court would have in the absence of that circumstance.' [Citation.]" (*In re I.J., supra,* 56 Cal.4th at p. 774.)

By Miriam's own account, throughout her six- or seven-year relationship with Alejandro, he was verbally and "very physically abusive" and had beaten her in the children's presence. Toward the end of their relationship, Miriam said, Alejandro had also disciplined J. by hitting her. "Exposure to domestic violence may serve as the basis of a jurisdictional finding under section 300, subdivision (b)." (*In re R.C.* (2012) 210 Cal.App.4th 930, 941 [""""[D]omestic violence in the same household where children are living . . . is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it""""; furthermore, "even if they are not physically harmed, children suffer enormously from simply witnessing the violence"].)

Miriam also acknowledged she had always known Alejandro to be a "heavy drug and alcohol user" and said he used drugs in her daughters' presence. In fact, Miriam knew Alejandro had offered crystal methamphetamine to another daughter (Viviana) in the past. Yet, Miriam took no protective action, and he gave Vanessa marijuana and offered her crystal methamphetamine too. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 825 ["a child's ingestion of illegal drugs constitutes 'serious physical harm' for purposes of section 300"].) Moreover, as addressed in the preceding section, Alejandro sexually abused Vanessa, but Miriam failed to acknowledge the abuse and failed to take adequate steps to protect her daughters thereafter.

When asked why she continued her affair with Alejandro and allowed him around her and her daughters instead of protecting them from him, Miriam said he was going to "win a lawsuit and give us money to buy a house" through a fraudulent disability claim. Even though she said he had repeatedly threatened to kill her family, continued coming to

21

the residence and continued to harass her at work, Miriam had taken no steps to keep her address information confidential, her information was available to Alejandro as a party and she had no restraining order in place. On this record, *Miriam's* long history of failing to protect her daughters in this manner placed them at continued substantial risk of abuse or neglect, and jurisdiction as to Ver., Val., and J. was proper pursuant to subdivision (j) of section 300 as this subdivision applies where "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected as defined in those subdivisions." Accordingly, we need not address the remaining subdivisions.

"Dependency proceedings are not designed to prosecute parents. [Citations.] In a dependency proceeding, the state is empowered to intervene because a parent's inadequacy puts a child at risk. Parents who fail or refuse to meet their parental obligations face the profound loss of a relationship with their child." (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1238, citations omitted.)

**Miriam's Challenges to the Dependency Court's Orders Regarding Disposition and Visitation Are Moot.**

According to the minute order dated April 22, 2014, after the completion of briefing in this matter, the dependency court terminated its October 22, 2013 orders for suitable placement and visitation for Miriam and Raul. At that time, the children were ordered placed with Miriam and Raul under the Department's supervision. As the children have already been returned to Miriam's and Raul's care, it follows that Miriam's challenges to the orders for suitable placement and visitation are moot. (See *In re Pablo D.* (1998) 67 Cal.App.4th 759, 761, citation omitted ["Obviously, we cannot rescind services that have already been received by the parents. Because we are unable to fashion an effective remedy, the appeal is moot."]; *Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10 [" It is well settled that appellate court will decide only actual controversies. Consistent therewith, it has been said that an action which originally was

22

based upon a justiciable controversy cannot be maintained on appeal if the questions raised therein have become moot by subsequent acts or events."].)

### *DISPOSITION*

The jurisdiction order is affirmed. The appeal from the disposition orders regarding the children's placement and Miriam's visitation is dismissed as moot.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**                    **ZELON, J.**