[No. F054698. Fifth Dist. Aug. 28, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES DOUGLAS SHAW, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

†Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, only the Factual and Procedural Histories, parts I. and V.A. of the Discussion, and the Disposition are certified for publication.

## Counsel

Scott Concklin, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Leanne Le Mon, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**WISEMAN, Acting P. J.—**

### *PROCEDURAL HISTORY*

Appellant James Douglas Shaw was charged in case No. BF118941A with three counts of child molestation in violation of Penal Code[1] sections 647.6, subdivision (c)(2), and 288, subdivision (a), against two victims, B.M. and A.B. It was also alleged that Shaw had suffered three prior convictions in 1985 within the meaning of section 667, subdivisions (c) through (j), and section 1170.12, subdivisions (a) through (e). Count 2 was alleged as a serious felony within the meaning of section 1192.7, subdivision (c)(6).

In case No. BF119693A, Shaw was charged with three additional counts of child molestation in violation of section 647.6, subdivision (c)(2), and section 288, subdivision (a), involving a different victim, B.B. It was also alleged that Shaw had suffered three prior convictions within the meaning of section 667, subdivisions (c) through (j), and section 1170.12, subdivisions (a) through (e), and that the three 1985 convictions were serious felonies within the meaning of section 667, subdivision (a). A multiple-victim enhancement pursuant to

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

section 667.61, subdivision (c), was also alleged. Counts 1 and 2 were alleged as serious felonies within the meaning of section 1192.7, subdivision (c)(6).

The court ordered the two cases consolidated for trial. The consolidated information charged as follows:

| Count | Allegations | Offense | Victim | Dates |
|-------|-------------|---------|--------|-------|
| 1 | *§ 647.6, subd. (c)(2)* 6 Strikes (§ 667, subds. (c)–(j) & § 1170.12, subds. (a)–(e)) | Annoying/ molesting w/prior 288 | B.M. | 12/16/05– 1/14/06 |
| 2 | *§ 288, subd. (a)* Serious felony (§ 1192.7, subd. (c)(6)); 6 Strikes (§ 667, subds. (c)–(j) & § 1170.12, subds. (a)–(e)); 3 prior serious felonies (§ 667, subd. (a)) | Lewd and lascivious act, child under 14 | A.B. | 2/01/06– 6/01/06 |
| 3 | *§ 647.6, subd. (c)(2)* 6 Strikes (§ 667, subds. (c)–(j) & § 1170.12, subds. (a)–(e)) | Annoying/ molesting w/prior 288 of child under 14 | A.B. | 2/01/06– 6/01/06 |
| 4 | *§ 288, subd. (a)* Serious felony (§ 1192.7, subd. (c)(6)); multiple victim (§ 667.61, subd. (c)); § 667.61, subd. (e)(5)); 6 Strikes (§ 667, subds. (c)–(j) & § 1170.12, subds. (a)–(e)); 6 prior serious felonies (§ 667, subd. (a)) | Lewd and lascivious act, child under 14 | B.B. | 2/01/03– 2/28/03 |
| 5 | *§ 288, subd. (a)* Serious felony (§ 1192.7, subd. (c)(6)); multiple victim (§ 667.61, subd. (c)); § 667.61, subd. (e)(5)); 6 Strikes (§ 667, subds. (c)–(j) & § 1170.12, subds. (a)–(e)); 6 prior serious felonies (§ 667, subd. (a)) | Lewd and lascivious act, child under 14 | B.B. | 3/01/03– 6/12/04 |
| 6 | *§ 288, subd. (c)(1)* 6 Strikes (§ 667, subds. (c)–(j) & § 1170.12, subds. (a)–(e)); 6 prior serious felonies (§ 667, subd. (a)) | Lewd and lascivious act, child under 14 | B.B. | 6/13/04– 6/12/05 |

The case was tried to a jury, which found Shaw guilty as charged on all counts and found the multiple-victim allegations true. In a bifurcated proceeding, Shaw admitted the prior conviction allegations. He was sentenced to

two consecutive terms of 45 years to life on counts 4 and 5 and to threeconsecutive terms of 25 years to life on counts 1, 2 and 6, plus a consecutive 20-year determinate term for the prior convictions. The term imposed on count 3 was stayed pursuant to section 654. The court awarded Shaw a total of 299 days of custody credit for time served.

## *FACTUAL HISTORY*

In 1985, Shaw was convicted in three separate counts of molesting a nine-year-old fourth grader whom he was babysitting. The victim, A.J., testified at trial that Shaw pushed her on the bed and put his hand down her pants and digitally penetrated her vagina. Shaw told A.J. not to tell her parents or they would not love her anymore. In 1996, Shaw molested A.S., a relative, who was around 14 or 15 years old. This molestation was not reported to authorities but was handled within the family. In 2007, Shaw was charged with molesting three additional victims, A.B., B.B., and B.M. The three girls ranged in age from eight to 16 years.

A.B. testified that when she was eight, she was alone with Shaw in the bedroom. Shaw pushed her against the bed and when she fell back, Shaw moved his private parts in a circle between her legs. She said he kept trying to move them toward her, almost pushed them on her and then brushed his private parts against her vaginal area. A.B. said Shaw asked her if it "felt good." A.B. was afraid and pushed Shaw away and ran out of the room. A.B. reported the molestation to her mother a couple of months later after watching a television show about sexual predators. A.B.'s mother confronted Shaw, but he denied this ever happened. At trial, he testified the two of them were just playing around, roughhousing.

B.M. was friends with Shaw's stepdaughters. Between December 2005 and January 1, 2006, when B.M. was 16 years old, Shaw took B.M. with him to a ranch for a day of horseback riding. B.M. thought Shaw's family would be with him, but when he picked her up, he was alone. On the ride to the ranch, Shaw made B.M. uncomfortable by asking her if she was a virgin and by telling her she should lose her virginity to an older man. After they rode for two to three hours in the company of the ranch's owner, Shaw took B.M. home. On the ride home, Shaw asked B.M. for a hug. He pulled her to the center of the front seat and kissed her. He put his arm around her, moved his hand to her breast and began rubbing it. When she pushed his hand away, he told her to stop fighting. He also moved his hand up and down her inner thigh, rubbing it. B.M. asked him to stop, but Shaw told her he knew it felt good and that they could pull over anytime.

B.M. told her mother what had happened after seeing a television show about a girl her age going through the same thing. B.M.'s mother, Theresa M., contacted police. The two of them worked with the police to record conversations with Shaw in which they confronted him. In these conversations, Shaw ultimately admitted that he had molested B.M. Two of the recorded interactions were played for the jury at trial, a taped phone conversation between Shaw and B.M. and a videotaped meeting between Shaw, B.M., and her mother.

B.B. was Shaw's stepdaughter's good friend. She was 12 when Shaw first molested her. The molestation occurred when they were alone in a trailer at the ranch or in Shaw's truck or in B.B.'s house. Although B.B. could not remember specific dates, she testified that Shaw touched her breasts, inner thighs, and vaginal area, both over and under her clothes. She testified that he digitally penetrated her a number of times, although not often. She said Shaw often took her to school. It was during these times that Shaw molested B.B. Shaw told B.B. that if she told anyone, people would hate her. After B.B.'s father learned of the allegations made by A.B. and B.M., he asked B.B. a number of times whether she had been touched inappropriately. Since B.B. was embarrassed and was afraid she would lose her friendship with Shaw's stepdaughter, she initially denied any inappropriate contact. Finally, after Shaw had been arrested on the other charges, B.B. told police what had happened.

Carol W., a cousin of Shaw's wife, testified about an incident that occurred between her and Shaw in 1999. She was an adult at the time. Shaw came to visit and said Carol needed a massage. She was not interested, but Shaw followed her to the bedroom and pushed her down on the bed. He began rubbing her legs, thighs, and vaginal area. He demanded a kiss and would not let her go. Finally, he left. Carol W. eventually informed police.

Shaw testified in his own behalf. He denied any inappropriate touching of the three victims, although he admitted the prior convictions.

## *DISCUSSION*

I. *Statute of limitations, counts 1 and 6*

Shaw was charged in count 1 with a felony violation of section 647.6, subdivision (c)(2), annoying or molesting a child under the age of 18 and having been previously convicted of a violation of section 288, subdivision (a). The statute provides that a person found to have violated this section

"shall be punished by imprisonment in the state prison for two, four, or six years." (§ 647.6, subd. (c)(2).) The offense was alleged to have occurred between December 16, 2005, and January 14, 2006. Prosecution began on April 30, 2007. Shaw contends that count 1 is barred by the one-year statute of limitations generally applicable to misdemeanor offenses, because section 647.6, subdivision (c)(2), does not change the underlying misdemeanor offense, it only enhances the sentence for recidivists. Shaw claims, "one should look to the conduct underlying the conviction to determine the applicable statute of limitations, without considering sentence enhancements due to recidivism."

Shaw relies on section 805, subdivision (a), which provides that "[a]n offense is deemed punishable by the maximum punishment prescribed by statute for the offense, regardless of the punishment actually sought or imposed. Any enhancement of punishment prescribed by statute shall be disregarded in determining the maximum punishment prescribed by statute for an offense." (§ 805, subd. (a).) He also relies on case authority holding that sentence-elevating enhancements are not elements of the underlying offense. (See *People v. Bouzas* (1991) 53 Cal.3d 467, 478 [279 Cal.Rptr. 847, 807 P.2d 1076] (*Bouzas*); *People v. Turner* (2005) 134 Cal.App.4th 1591 [36 Cal.Rptr.3d 888] (*Turner*); *People v. Whitten* (1994) 22 Cal.App.4th 1761, 1765 [28 Cal.Rptr.2d 123] (*Whitten*); *People v. Coronado* (1995) 12 Cal.4th 145, 152 [48 Cal.Rptr.2d 77, 906 P.2d 1232]; *People v. Merkley* (1996) 51 Cal.App.4th 472, 476 [58 Cal.Rptr.2d 21].)

■ This issue, the appropriate statute of limitations to be applied to section 647.6, subdivision (c)(2), has been addressed by two other appellate courts in *People v. San Nicolas* (1986) 185 Cal.App.3d 403 [229 Cal.Rptr. 650] (*San Nicolas*), which addressed the issue in the context of section 647a, the statutory precursor to section 647.6, subdivision (c)(2), and *People v. McSherry* (2006) 143 Cal.App.4th 598 [49 Cal.Rptr.3d 389] (*McSherry*). Both courts concluded that when a defendant is charged with felony child annoyance or molestation as a recidivist, the appropriate statute of limitations is the three-year felony statute of limitations. We conclude these cases are persuasive and follow their lead.

The court in *San Nicolas* noted that a violation of former section 647a was defined statutorily as an offense with variable punishments according to the criminal history of the defendant. The court also observed that the prior conviction required for the maximum penalty did not work as an enhancement, i.e., an additional term of imprisonment added to a base term, but instead converted what would otherwise be a misdemeanor into a felony

offense with a greatly increased maximum penalty. (*San Nicolas, supra,* 185 Cal.App.3d at p. 407.) The court pointed out that to construe section 805 as the defendant in *San Nicolas* contended (and Shaw here contends) would lead to absurd results. "Such interpretation would erode the distinction between enhancements and elements of an offense in certain hybrid offenses. In effect, it would establish the same period of limitation for the prosecution of felonies and misdemeanors in those instances in which an offender's criminal history dictates the degree of the crime. That consequence surely could not have been intended by the Legislature and cannot be permitted. [Citation.]" (*San Nicolas, supra,* at p. 408.)

*McSherry,* a more recent decision, adopted the reasoning of *San Nicolas,* enhancing the analysis with a reference to the legislative history of subsequent changes to the law. The *McSherry* court looked directly at the language of the statute, which expressly provides for a maximum sentence of six years. Under section 805, subdivision (a), the applicable statute of limitations is determined by the maximum punishment proscribed. A literal reading of the governing statutes supports a finding that the applicable statute of limitations is three years. (*McSherry, supra,* 143 Cal.App.4th at pp. 603–604.) Next, the *McSherry* court noted that, "given the *San Nicolas* result in 1986, application of the misdemeanor statute of limitations in this case would run afoul of the rule of statutory construction that recognizes that where statutory language has been construed judicially, and the Legislature thereafter amends the statute but leaves the construed language intact, it is presumed the Legislature was aware of the prior construction and adopted it. [Citations.]" (*Id.* at p. 603.)

The court explained that section 647.6, subdivision (c)(2), is a subsequent statute on a similar subject that uses substantially similar language to the statute construed by *San Nicolas.* "At the time of *San Nicolas,* section 802, subdivision (b), provided prosecution for a misdemeanor violation of former section 647a committed upon a minor under the age of 11 years, could be commenced within two years after commission of the offense. (Stats. 1985, ch. 1172, § 2, p. 3957.) In 1991, the Legislature amended section 802, subdivision (b), to increase the applicable age of the child from 11 years to 14 years and to add an express reference to section 647.6. (Stats. 1991, ch. 129, § 1, p. 1328.) [¶] The Legislature amended section 802, subdivision (b), again in 2002 to increase the limitation period for a violation of section 647.6 when the victim was under the age of 14 years from two to three years. (Stats. 2002, ch. 828, § 2.) By effecting these amendments without disturbing the judicial construction of the limitations period applicable to a violation of the precursor of section 647.6, subdivision (c)(2), the Legislature indicated its intent to adopt the *San Nicolas* result that the applicable statute of limitations

for that offense is three years. [Citation.]" (*McSherry, supra*, 143 Cal.App.4th at pp. 603–604.)

McSherry also noted that the legislative committee reports prepared in conjunction with the 2002 amendments to section 802, subdivision (b), state that the statute of limitations for child annoyance with a prior conviction was *three years or more.* (*McSherry, supra*, 143 Cal.App.4th at p. 604; see Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2499 (2001–2002 Reg. Sess.) as introduced Feb. 21, 2002, p. 7 [applicable statute of limitations is three years for repeat offenders]; Sen. Com. on Public Safety, Analysis of Assem. Bill No. 2499 (2001–2002 Reg. Sess.) as amended June 27, 2002, p. J [under current law, person previously convicted of child annoying as misdemeanor is punishable as felony for second or subsequent conviction; applicable statutes of limitations for these felony offenses is three years or more, depending upon penalty term].) This history reflects a legislative intention that the offense described in section 647.6, subdivision (c)(2), be subject to the three-year felony statute of limitations.

McSherry distinguishes *Turner, supra*, 134 Cal.App.4th 1591, a case Shaw claims supports his position that the recidivist provision of section 647.6, subdivision (c)(2), is an enhancement and not part of the underlying offense for purposes of section 805. *McSherry* notes that the defendant in *Turner* was charged with residential robbery, which generally must be prosecuted within three years. Since a "Three Strikes" prior conviction allegation subjected the defendant to a maximum term of 25 years to life in state prison, the trial court in *Turner* applied the never-expiring statute of limitations provided in section 799, which sets the statute of limitations for those offenses prescribing life terms. The appellate court in *Turner* reversed on the ground that the Three Strikes law is an alternative sentencing scheme, which should not govern the maximum punishment prescribed for the offense for purposes of determining the applicable statute of limitations. (*McSherry, supra*, 143 Cal.App.4th at p. 603.) *McSherry* accurately concluded that section 647.6 does not involve an alternative sentencing scheme.

The remaining cases cited by Shaw do not require a different outcome. First, as with *Turner*, none of them are directly on point. In *Whitten, supra*, 22 Cal.App.4th at page 1764, we held that it was improper to use a prior section 288 conviction to aggravate a sentence when it was also used to elevate a violation of section 647.6 to a felony conviction, a classic dual use of facts analysis. This is not the issue before us now. In *Whitten*, we noted that the prior conviction component of section 647.6, subdivision (c)(2), was not an element of the offense and cited *Bouzas, supra*, 53 Cal.3d 467.

In *Bouzas*, the court considered whether the prior-conviction allegation found in section 666 (petty theft with a prior) was an *element* of the offense so that it had to be proved to the trier of fact in open court preventing the defendant from removing the prior conviction from the jury by stipulating to its existence. (*Bouzas, supra*, 53 Cal.3d at pp. 470–471.) The *Bouzas* court concluded it was not, describing the prior-conviction component of the offense as a "sentencing factor." (*Id.* at p. 480.) The court in *People v. Merkley, supra*, 51 Cal.App.4th 472, 476, reached the same result when considering the same issue. None of these cases address the issue here. We have no problem with the holdings in each of these cases and do not believe a legal conclusion that the prior-conviction allegation is not an element of the offense precludes a finding that a sentence-elevating enhancement provision such as found in section 647.6, subdivision (c)(2), should be considered when setting the maximum punishment prescribed by statute for purposes of section 805, subdivision (a).

■ *People v. Coronado, supra*, 12 Cal.4th 145, another case cited by Shaw, supports our conclusion. In this case, the defendant argued that his prior conviction could not be used both to elevate his conviction to a felony under former Vehicle Code section 23175 (added by Stats. 1983, ch. 637, § 3, p. 2546, repealed by Stats. 1998, ch. 118, § 41, eff. July 1, 1999), a statute operating similar to section 647.6, subdivision (c)(2), and to enhance his sentence pursuant to section 667.5, subdivision (b). The court concluded, however, that the prior conviction could be used for both purposes, which it found distinct. (*People v. Coronado, supra*, 12 Cal.4th at p. 153.) The court's decision to allow dual use of the prior in this context is consistent with our conclusion that these sentence-enhancing factors are neither enhancements nor elements of the offense and may be considered for purposes of calculating the statute of limitations period under section 805.

■ We also reject Shaw's equal protection argument. In order to prove a violation of equal protection, the proponent of the argument must prove he or she is similarly situated to one treated differently under the statute. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654] [first inquiry in equal protection claims is whether state has adopted classification affecting two or more similarly situated groups in unequal manner].) A person who annoys or molests a child, and has done so in the past, is not similarly situated to one who has committed the same offense but has never before done so. (See *People v. Coronado, supra*, 12 Cal.4th at p. 153 [one who has before been convicted of same offense is more blameworthy offender].)

Shaw also contends that count 6 (§ 288, subd. (c)(1); committed against B.B.) was time-barred because the earliest date in the range of time alleged for the conduct fell outside the applicable statute of limitations period. All parties agree the prior statute of limitations on count 6 would have expired on June 13, 2007, and prosecution did not begin until June 27, 2007. The Attorney General, however, has pointed out that the statute of limitations period for a violation of section 288 was extended to any time prior to the victim's 28th birthday before the statute of limitations expired in this case. (§ 801.1, subd. (a), amended by Stats. 2005, ch. 479, § 2; see also *Stogner v. California* (2003) 539 U.S. 607, 618–619 [156 L.Ed.2d 544, 123 S.Ct. 2446] [if limitations period extended before current period expires, no constitutional violation].) Shaw concedes this is correct. We accept the concession.

II.–IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

V. *Instructional error allegations*

A. *Elements of section 647.6, subdivision (c)(2)*

Shaw argues that the trial court erred when it instructed the jury that it must find that Shaw's conduct was motivated by "an unnatural or abnormal sexual interest in *the child*" (italics added), instead of referencing the protected class as a group, children. He claims that, because section 647.6 protects children as a class, an unnatural or abnormal sexual interest in any one particular child is not encompassed by the statute's prohibition. As we understand his argument, particularly in light of his analogy to hate crime offenses, Shaw argues that B.M.'s status as a child may not have been the motivating factor for the offense. In a hate crime case, the prosecution must prove that the offense was committed because of the perpetrator's racial, religious, or other specified bias. (*In re M.S.* (1995) 10 Cal.4th 698, 717–718 [42 Cal.Rptr.2d 355, 896 P.2d 1365].) Shaw argues that the standard instruction given, Judicial Council of California Criminal Jury Instructions (2006–2007) CALCRIM No. 1122, fails to inform the jury that the offense is only committed if an unnatural or abnormal sexual interest in children in general is the motivating factor for the offense. He also argues that evidence that he assaulted an adult female suggests his offense against B.M., who was 16 and according to Shaw "close to adulthood," was not motivated by a sexual interest in children.

---

*See footnote, *ante*, page 92.

■ We disagree. First, Shaw has pointed to no authority to support his assertion that the standard instruction is flawed as written. CALCRIM No. 1122 states that the jury must find that the defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child victim. The statute does not merely protect children as a class; it protects "any child" in the State of California from being annoyed or molested by an adult motivated by an unnatural or abnormal sexual interest. (§ 647.6, subd. (a)(1).) Shaw's analogy to hate crimes breaks down here because there can be no *normal* sexual interest in any child and it is the sexual interest in the child that is the focus of the statute's intent.

The case authority Shaw relies upon does not support his novel position. *In re Gladys R.* (1970) 1 Cal.3d 855, 867–868 [83 Cal.Rptr. 671, 464 P.2d 127], reiterates that the primary purpose of the statute[2] is to protect children from interference by sexual offenders. The issue the court decided was whether the words "annoy" and "molest" as used in the statute required a sexual motivation at all, and not whether the sexual-interest reference is directed toward a group rather than an individual. The passage cited by Shaw in his brief does not originate in *Gladys R.*, but is quoted from *People v. Pallares* (1952) 112 Cal.App.2d Supp. 895, 901 [246 P.2d 173]. The issue in *Pallares* was similar to the issue in *Gladys R.* and does not define the scope of the sexual interest, but addresses whether the words "annoy" or "molest" were unconstitutionally vague as used in the statute. The entire *Pallares* quote is as follows: "When the words annoy or molest are used in reference to offenses against children, there is a connotation of abnormal sexual motivation on the part of the offender. Although no specific intent is prescribed as an element of this particular offense, a reading of the section as a whole in the light of the evident purpose of this and similar legislation enacted in this state indicates that the acts forbidden are those motivated by an unnatural or abnormal sexual interest or intent with respect to children." (*People v. Pallares, supra,* 112 Cal.App.2d at p. Supp. 901.)

■ The term "children" in the latter part of the quote reflects the use of the term "children" in the first part of the quote, which refers to the victims of the crime, not the nature of the abnormal or unnatural sexual interest. The statute defines the victim it seeks to protect as "any child." (§ 647.6, subd. (a)(1).) The quote could have just as easily been written as follows: "When the words annoy or molest are used in reference to offenses against a child, there is a connotation of abnormal sexual motivation on the part of the offender. Although no specific intent is prescribed as an element of this

---

[2] The statute in question was former section 647a, which we have already observed is the precursor to section 647.6.

particular offense, a reading of the section as a whole in the light of the evident purpose of this and similar legislation enacted in this state indicates that the acts forbidden are those motivated by an unnatural or abnormal sexual interest or intent with respect to a child." (*People v. Pallares, supra,* 112 Cal.App.2d at p. Supp. 901, as modified.)

The term "children" was not used in either *Pallares* or *Gladys R.* as defining the scope of the abnormal sexual interest, but in defining the class of victims. The statutory language and intent is clear. A defendant may not in any way annoy or molest a child in order to satisfy his or her own abnormal or unnatural sexual interest. To hold that a defendant might lawfully annoy or molest a child motivated by an abnormal sexual interest toward that child alone is not only ludicrous, but defeats the express statutory purpose of protecting *any child* in this state against sexual offenses.

Even if the mens rea required for a conviction of section 647.6, subdivision (c)(2), required the jury to find that Shaw's acts were motivated by an unnatural or abnormal sexual interest toward children generally and not any one particular child, any error was harmless beyond a reasonable doubt. The evidence overwhelmingly established that Shaw had molested at least three children in 1985 and that he had recently molested three additional victims, all children of various ages. There could be no question that Shaw's abnormal sexual interest extended beyond B.M. to children generally, even in light of the evidence that Shaw had once sexually assaulted an adult woman. B.M. was a minor. Shaw knew this and his conversations with her after the assault acknowledge her youth and innocence. The distinction between "child" and "children" in this case is a distinction without a difference.

B. *Unanimity**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

VI. *Conduct credit**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 92.

## *DISPOSITION*

The judgment is affirmed. Shaw is awarded an additional day of conduct credit. The trial court shall prepare an amended abstract of judgment and distribute it to the appropriate authorities.

Dawson, J., and Hill, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 2, 2009, S176954. Kennard, J., was of the opinion that the petition should be granted.