Filed 10/5/21  P. v. Ray CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C091130 |
| Plaintiff and Respondent, | (Super. Ct. No. 17F1261) |
| v. | |
| RONNIE LIN RAY, | |
| Defendant and Appellant. | |

A jury convicted defendant Ronnie Lin Ray of attending an arranged meeting with a minor with intent to commit a sexual offense (Pen. Code, § 288.4, subd. (b)—count 1)[1] and attempting to contact a minor with intent to commit a sexual offense (§ 288.3, subd. (a)—count 2).

---

[1] Undesignated statutory references are to the Penal Code.

1

At sentencing, the court placed defendant on probation for three years and imposed a term of 178 days in county jail, subject to a suspended prison term of two years and six months.

On appeal, defendant contends: (1) his conviction for violating section 288.4 must be reversed because the statute is unconstitutionally vague; (2) the trial court erred by failing to correct the prosecutor's misstatements regarding the elements of that offense; (3) the evidence was insufficient to support either count; (4) the court erred in admitting a statement he made regarding his son's arrest; (5) his conviction for violating section 288.3 must be reversed because the statute requires an actual minor victim; and (6) his trial counsel rendered ineffective assistance by not objecting to the court's imposition of certain fees and fines without a hearing to determine his ability to pay them. Additionally, the parties submitted supplemental briefing regarding the applicability of recent legislation limiting probation terms. We will affirm the judgment and remand for resentencing in light of this change.

## I. BACKGROUND

A Redding police officer testified he posted advertisements on Craiglist as part of an undercover operation. In 2017, he posted an ad in the personal section titled " 'Lonely and bored' " under the name Brian.

Defendant responded to the ad, describing his interests and stating he "[w]ould like to find a regular fwb. I'm 50 but don't feel it[;] mentally I'm much younger." Defendant testified "fwb" meant a friend with benefits or "a friend that has sexual relations." Brian replied, "Wow, it's like it[']s meant to be."

Defendant asked if age was an issue. Brian responded, "As long as it isn't for you." Defendant said, "[f]or the most part no" and he was "[n]ot looking for a relationship just a friend with benefits type of thing. [¶] No strings or drama."

They continued to exchange messages. Eventually, Brian said he was in high school. "You know how old I am, right?" asked defendant. "And you're 18 at least right?" Brian said he was "a mature 15. I hope that doesn't scare you off."

Defendant asked why Brian would want to hang out with someone his age. Brian said he related better to older people and it was difficult being gay and trying to find a partner. "I can see that," said defendant. "However[,] I'm not going to jail so we can be friends without benefits."

Brian said, "I understand, let me know if you change your mind." The officer testified he sent this message to give defendant an easy way out of the conversation and to leave it up to defendant whether to continue. The officer estimated that, in other operations, at least 98 percent of people cut off contact at this point.

Defendant wrote back seven minutes later: "I don't see why we couldn't meet sometime."

Brian replied, "[S]ounds good. I just don't want to waste your time or mine if you know what I mean," and "I would love to meet you and learn a few things."

As they planned their meeting, defendant asked, "This isn't some kind of trick to entrap/ arrest me is it?"

Brian said he was not a cop. He reiterated that he did not want to waste his or defendant's time and asked, "Are we going to blow each other or have some sex?" Defendant said, "You won't be disappointed."

They agreed to meet in a parking lot near an aquatic center. Defendant said they should probably drive somewhere else after they met depending on how busy it was. Brian asked defendant to bring protection. Defendant replied, "I will have what we need."

The officer went to the meeting place and saw defendant arrive in his truck. When the officer approached in full police uniform, defendant's eyes widened, and he put his truck in reverse. The officer announced, "Police," and told him to stop. Defendant

3

stopped.  As defendant got out of his truck he said, " 'I know what this is about, and I didn't do anything.  My son just got arrested for the same thing, so I know better.' "  After the officer read defendant his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, defendant said he was there "to counsel Brian on the dangers of Craigslist."  Defendant said he thought he had condoms or lubricant in his car, but the officer did not find any.

At trial, defendant denied any interest in meeting anyone underage.  He testified that he continued the conversation after learning Brian's age to make sure he was safe.  Further, "I didn't see why we couldn't meet sometime, and I could enlighten him a little bit about the dangers of what he was doing."

## II.  DISCUSSION

*A.*      *Vagueness*

Section 288.4, subdivision (a)(1) provides:  "Every person who, motivated by an unnatural or abnormal sexual interest in children, arranges a meeting with a minor or a person he or she believes to be a minor for the purpose of exposing his or her genitals or pubic or rectal area, having the child expose his or her genitals or pubic or rectal area, or engaging in lewd or lascivious behavior, shall be punished by a fine not exceeding five thousand dollars ($5,000), by imprisonment in a county jail not exceeding one year, or by both the fine and imprisonment."  Subdivision (b) increases the proscribed punishment when this person also "goes to the arranged meeting place at or about the arranged time."  Defendant contends count 1 must be reversed because the terms "unnatural or abnormal sexual interest in children" render section 288.4 unconstitutionally vague under the state and federal constitutions.  We disagree.

"The due process concept of fair warning is the underpinning of the vagueness doctrine."  (*People v. Castenada* (2000) 23 Cal.4th 743, 751.)  Under both the federal and state Constitutions, " 'due process of law in this context requires two elements: a criminal statute must " 'be definite enough to provide (1) a standard of conduct for those whose

4

activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt.' " ' " (*People v. Morgan* (2007) 42 Cal.4th 593, 605.)

Our Supreme Court "has recognized 'the strong presumption that legislative enactments "must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. [Citations.] A statute . . . cannot be held void for uncertainty if any reasonable and practical construction can be given to its language." ' [Citation.] Therefore, 'a party must do more than identify some instances in which the application of the statute may be uncertain or ambiguous; he must demonstrate that "the law is impermissibly vague *in all of its applications*." . . . [Citation.]' [Citation.] Stated differently, ' "[a] statute is not void simply because there may be difficulty in determining whether some marginal or hypothetical act is covered by its language." ' " (*People v. Morgan*, *supra*, 42 Cal.4th at pp. 605-606.)

*1. Standard of Conduct*

As set forth above, due process first requires that the challenged statute "be definite enough to provide a standard of conduct for those whose activities are proscribed. [Citations.] Because we assume that individuals are free to choose between lawful and unlawful conduct, 'we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly. Vague laws trap the innocent by not providing a fair warning.' " (*People v. Heitzman* (1994) 9 Cal.4th 189, 199.) In analyzing this requirement, " 'we look first to the language of the statute, then to its legislative history, and finally to the California decisions construing the statutory language.' [Citation.] This analytical framework is consistent with the notion that we 'require citizens to apprise themselves not only of statutory language, but also of legislative history, subsequent judicial construction, and underlying legislative purposes.' " (*Id.* at p. 200.)

Defendant argues the language is ambiguous because "[a]bnormal implies a known norm, with an empirical basis in fact." He also argues "[u]nnatural has no clear

5

meaning because there is no agreed-upon definition of the natural state of sexual relations between two people." He contrasts a medical definition of pedophilia that specifies ages and age differentials.

The phrase "unnatural or abnormal sexual interest in children" conveys sexual interest in children that departs from both the typical and the accepted standards of social behavior. (See Webster's 3d New Internat. Dict. (2002) p. 4 [defining abnormal as "deviating from the normal", "differing from the typical," and "departing from the accepted standards of social behavior"], p. 2504 [defining unnatural as "not being in accordance with normal feelings or behavior" and "inconsistent with what is natural or expected"].) "That a statute does not afford mathematical precision is not fatal." (*People v. Bermudez* (2020) 45 Cal.App.5th 358, 369, disapproved on other grounds in *People v. Valencia* (2021) 11 Cal.5th 818, 839, fn. 17.) " 'The law is replete with instances in which a person must, at his peril, govern his conduct by such nonmathematical standards as "reasonable," "prudent," "necessary and proper," "substantial," and the like.' . . . Yet standards of this kind are not impermissively vague, provided their meaning can be objectively ascertained by reference to common experiences of mankind.' " (*People v. Morgan*, *supra*, 42 Cal.4th at p. 606.) As we will discuss further in the context of the applicable case law, our society generally views an adult's sexual interest in children as unacceptable and therefore abnormal and unnatural.

Defendant contends the statute is unconstitutionally vague because neither the case law nor the legislative history adequately defines "unnatural or abnormal sexual interest in children" or resolves its allegedly inherent ambiguity. We disagree.

The legislative history is illuminating. The first draft of the proposed statute that became section 288.4[2] stated, in relevant part, "Any adult who contacts or communicates

---

[2] "The offense was originally added as section 288.3 by an urgency measure in September 2006. In November 2006, Proposition 83 enacted a new section 288.3

with a minor under 16 years of age, or who contacts or communicates with another person whom the adult believes to be a minor under 16 years of age, with the intent to commit any lewd or lascivious act, is guilty of a misdemeanor or felony." (Sen. Amend. to Sen. Bill No. 1128 (2005-2006 Reg. Sess.) Feb. 9, 2006, § 4.) Thus, the bill was ultimately amended to delete language specifying the relative ages of the accused and the victim.

After the bill was amended to include the language that is now before us, the Legislature described its origins: "This new crime is drawn from a long-standing statute ([§] 647.6) that prohibits a person who has an abnormal sexual interest in children from annoying or bothering children." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1128 (2005-2006 Reg. Sess.) as amended Mar. 7, 2006, p. D.) More exactly, at that time, section 647.6, subdivision (a), by its terms applied to "[e]very person who annoys or molests any child under the age of 18"[3] and the Legislature explained that "[d]ecisional law has interpreted this crime to include an element that the perpetrator had an abnormal or unnatural sexual interest in children." (Stats. 2000, ch. 657, § 1; Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1128 (2005-2006 Reg. Sess.) as amended Mar. 7, 2006, p. C.) The Legislature cited *People v. McFarland* (2000) 78 Cal.App.4th 489 for this point. (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1128 (2005-2006 Reg. Sess.) as amended Mar. 7, 2006, p. C.) In *McFarland*, the defendant pulled a child

---

creating a different crime." (*People v. Fromuth* (2016) 2 Cal.App.5th 91, 101, fn. 8 (*Fromuth*).) This is the crime defendant was convicted of in count 2. "In 2007, the original section 288.3 created by the Legislature was renumbered as section 288.4 without any substantive changes." (*Ibid.*)

[3] This language is now found in section 647.6, subdivision (a)(1). "Section 647.6, subdivision (a)(2), which was added to section 647.6 by the same legislation that created the section 288.4 offense, contains the same motive element as section 288.4. However, unlike section 288.4, section 647.6, subdivision (a)(2) does not contain a separate specific intent element." (*Fromuth, supra*, 2 Cal.App.5th at p. 102, fn. 10.)

7

toward him in a laundromat and stroked her arm and face, and the court of appeal explained that a violation of section 647.6 "required proof that his conduct was motivated by an unnatural or abnormal sexual interest in the victim."[4] (*McFarland, supra,* at p. 494.) The Legislature further stated the section 288.4 offense "uses settled and court-tested language from . . . Section 647.6 . . . about persons with an abnormal sexual interest in children. The crime defined is committed where the defendant, with the noted abnormal interest, contacts a child or a person they think is a child with the intent to engage in sexual activity." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1128 (2005-2006 Reg. Sess.) as amended Mar. 7, 2006, p. I.)

The language originated almost 70 years ago in *People v. Pallares* (1952) 112 Cal.App.2d Supp. 895, which explained, in the context of a vagueness challenge to former section 647a, which originally proscribed the offense of annoying or molesting a child: "When the words annoy or molest are used in reference to offenses against children, there is a connotation of abnormal sexual motivation on the part of the offender. Although no specific intent is prescribed as an element of this particular offense, a reading of the section as a whole in the light of the evident purpose of this and similar legislation enacted in this state indicates that the acts forbidden are those motivated by an

---

**4** *People v. McFarland*, *supra*, 78 Cal.App.4th 489 does not further define this requirement. The court of appeal reversed the conviction because the expert improperly testified on the ultimate issue that the defendant harbored an unnatural or abnormal sexual interest in the victim when he touched her. (*Id.* at pp. 495, 497.) Thus, defendant's reliance on *McFarland* is unavailing. (See AOB 24-25) We note the Legislature in creating the section 288.4 offense chose the plural form "children" despite the fact an abnormal sexual interest in the child victim is understood to be sufficient under section 647.6. (See *People v. Shaw* (2009) 177 Cal.App.4th 92, 103-104 [explaining origins of the phrase and requirement that defendant be motivated by unnatural or abnormal sexual interest in the child victim], with *Fromuth*, *supra*, 2 Cal.App.5th at p. 102, fn. 11 ["Section 288.4 explicitly uses the word 'children' in defining the motive element"].)

8

unnatural or abnormal sexual interest or intent with respect to children." (*Pallares, supra,* at p. 901.) Our Supreme Court subsequently reaffirmed this construction and held the statute "applies only to offenders who are motivated by an unnatural or abnormal sexual interest or intent." (*In re Gladys R.* (1970) 1 Cal.3d 855, 867.) It has been observed in the context of section 647.6 that, as construed by our courts, "this 'unnatural or abnormal sexual interest' requirement is not very demanding." (*Nicanor-Romero v. Mukasey* (9th Cir. 2008) 523 F.3d 992, 1001, overruled on another ground in *Ceron v. Holder* (9th Cir 2014) 747 F.3d 773, 782, fn. 2.) The interest "may be shown by the mere fact that the subject of the interest was underage. That is, a sexual interest that would be natural and normal if motivated by conduct directed at an 18-year old becomes unnatural or abnormal under [section] 647.6[, subdivision ](a) if directed at someone who is underage." (*Ibid.*; see *People v. Thompson* (1988) 206 Cal.App.3d 459, 466, fn. 3.) Indeed, it has been stated that "there can be no *normal* sexual interest in any child." (*People v. Shaw*, *supra*, 177 Cal.App.4th at p. 103 [interpreting section 647.6].) We turn now to case law construing the challenged phrase in the context of section 288.4.

In *People v. Yuksel* (2012) 207 Cal.App.4th 850, the defendant exchanged online messages with a detective representing himself to be a 14-year-old girl. (*Id.* at p. 852.) For purposes of instructing the jury on the elements of the crime, the Court of Appeal held that "a child under section 288.4 is, like a minor, any person under the age of 18 years." (*Id.* at p. 855.) The court also quoted *People v. Shaw, supra*, 177 Cal.App.4th at p. 103, and stated " 'there can be no *normal* sexual interest in any child.' " (*Yuksel*, *supra*, at p. 855.) The age of the defendant in *Yuksel* was not noted, and section 288.4 (like section 647.6) sets forth no requirements in this regard. The only other published authority interpreting the scope of this provision has explained that "[w]here a person arranges a meeting with a child of a similar age (such as two 16 year olds arranging a tryst or even an 18 year old arranging a meeting with his 17-year-old girlfriend), the sexual interest motivating the arrangement of the meeting will not usually be found to be

9

'unnatural or abnormal' and therefore will not violate section 288.4 even though the person arranging the meeting intends to engage in sexual conduct with a child." (*Fromuth, supra*, 2 Cal.App.5th at p. 106.) In essence, the difference between this statement and the statement that there is no normal sexual interest in a child is the basis for defendant's vagueness argument. However, none of the authorities, including this case, actually dealt with the hypothetical suggested in *Fromuth* in which both individuals are similar ages. In *Fromuth*, the defendant was 30 and believed he was meeting a 15-year-old girl. (*Id*. at pp. 96-97.) "It is axiomatic that cases are not authority for propositions not considered." (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10.)

As the case law explains, when it comes to children, it is generally understood that a defendant's sexual interest in them will be considered abnormal and not within accepted standards of social behavior. The fact that sometimes the age difference between adults and children is marginal is insufficient to demonstrate the phrase "unnatural or abnormal sexual interest in children" is " ' "impermissibly vague *in all of its applications*." ' " (See *People v. Morgan*, *supra*, 42 Cal.4th at p. 606.) As defendant's initial statement to the officer indicates, he had a reasonable opportunity to know what was prohibited and act accordingly. The fact that the statute and case law may leave open the answers to certain hypotheticals does not render section 288.4 void. (*People v. Ervin* (1997) 53 Cal.App.4th 1323, 1330.) Defendant had fair notice that the charged acts would subject him to criminal liability.

### 2. *Standard for Enforcement*

In addition to affording adequate notice, due process requires that section 288.4 "provide standards for its application and adjudication in order to avoid the dangers of arbitrary and discriminatory enforcement." (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 575.) Defendant did not separately address this question. " ' "A vague law impermissibly delegates basic policy matters to police[], judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and

discriminatory application." ' " (*Williams*, *supra*, at pp. 567-568.) Defendant challenges only one of the requirements for a conviction under section 288.4. The additional statutory requirement that a meeting be arranged to engage in specified conduct "reduces the likelihood of arbitration or discriminatory enforcement." (See *id.* at p. 576 ["The causation element of [challenged statute] also reduces the likelihood of arbitrary or discriminatory enforcement"].) As to whether the defendant was also "motivated by an unnatural or abnormal sexual interest in children," prior case law offers guidance for enforcement, and although situations involving small age differences may "call[] for sensitive judgment in both enforcement and adjudication, we would not be justified in assuming that police, prosecutors, and juries are unable to exercise such judgment." (*Id.* at p. 577.) Indeed, law enforcement has been tasked with employing this standard in enforcing a different statute for almost 70 years.

For these reasons, defendant's vagueness challenge to section 288.4 lacks merit.

B.      *Closing Argument*

1.      *Trial Court Proceedings*

The trial court instructed the jury with CALCRIM No. 1126 that to prove the defendant was guilty of count 1, the prosecution had to prove: "1. The defendant arranged a meeting with a person he believed to be a minor; [¶] 2. When the defendant did so, he was motivated by an unnatural or abnormal sexual interest in children; [¶] 3. At that meeting, the defendant intended to expose his genitals or pubic or rectal area or have the minor expose his genitals or pubic or rectal area or engage in lewd or lascivious behavior; [¶] AND [¶] 4. The defendant went to the arranged meeting place at or about the arranged time."

The record indicates the prosecutor used slides or a similar visual aid during closing argument. Further, the prosecutor appeared to read from the instructions to describe the charged offenses: "Count [o]ne has four elements. [1.] The defendant arranged a meeting with a person he believed to be a minor. [2.] When the defendant did

11

so, he was motivated by an unnatural or . . . abnormal sexual interest in children.  [3.] *That's a long-winded way of saying essentially at that meeting he intended to engage in some kind of sexual behavior.  Obviously there's a lot more worded there*, and finally, [4.]  the defendant went to arranged meeting place at or about the arranged time.  [¶]  I'm going to break down each of these and show you how each of these elements have been proven today."  (Italics added.)  Then the prosecution went through each element.

2.      *Analysis*

Defendant contends the prosecutor argued an " 'unnatural or a . . . abnormal sexual interest in children,' is just 'a long-winded way of saying essentially at that meeting he intended to engage in some kind of sexual behavior,' " and the trial court's failure to correct this misstatement of the law entitles him to a reversal because it lowered the burden of proof.  Specifically, defendant argues the prosecution conflated the second and third elements regarding motive and intent, respectively, and thereby removed an essential element of the crime from the jury's consideration.  He contends "the trial court should have corrected the error and instructed the jury that the two elements are distinct."

As a threshold matter, while the People have accepted the factual premise of defendant's argument, we do not.  Viewing the statement in its context, "[t]hat's a long-winded way of saying essentially at that meeting he intended to engage in some kind of sexual behavior" appears to be the prosecution's description of the intent element ("[a]t that meeting, the defendant intended to expose his genitals or pubic or rectal area or have the minor expose his genitals or pubic or rectal area or engage in lewd or lascivious behavior") rather than commentary on the motive element ("[w]hen the defendant did so, he was motivated by an unnatural or . . . abnormal sexual interest in children").  While the word "that" might normally be understood to refer to something in the preceding sentence, it could also refer to something a person is pointing at, and here the record suggests the prosecutor was reading from the instructions before discussing the elements individually.  Further, the prosecution's next statement, which neither party quotes, is

12

critical to understanding the prosecutor's discussion. "Obviously there's a lot more worded there," had to refer to the third element because the second element had already been quoted in its entirety and the fourth element was restated completely next. By itself, "[o]bviously there's a lot more worded there" is an incomplete thought, and thus it belongs with the challenged phrase as part of the prosecution's reading of the intent element: "That's a long-winded way of saying essentially at that meeting he intended to engage in some kind of sexual behavior. Obviously there's a lot more worded there." This is similar to how the prosecutor later described the intent element when she discussed it further: "Element three. This is a very long, detailed description that essentially has to do with some kind of sexual behavior or exposing yourself or the minor in a certain way." At worst the prosecutor's recitation of the elements was ambiguous; at best, defendant's argument fails with its premise.

Regardless, in essence, defendant raises a claim of prosecutorial misconduct: "Advocates are given significant leeway in discussing the legal and factual merits of a case during argument. [Citation.] However, 'it is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its . . . obligation to overcome reasonable doubt on all elements [citation].' " (*People v. Centeno* (2014) 60 Cal.4th 659, 666.) "When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*Id.* at p. 667.)

To preserve a claim of prosecutorial misconduct for appeal, the defendant must make a timely objection at trial and request an admonition to the jury. (*People v. Thornton* (2007) 41 Cal.4th 391, 454.) Defendant did not do so. "The primary purpose

13

of the requirement that a defendant object at trial to argument constituting prosecutorial misconduct is to give the trial court an opportunity, through admonition of the jury, to correct any error and mitigate any prejudice." (*People v. Williams* (1997) 16 Cal.4th 153, 254.) Thus, defendant has forfeited any claim that the trial court should have corrected any misleading or inaccurate statements of the law by the prosecutor because he made no such request. (*People v. Najera* (2006) 138 Cal.App.4th 212, 224.)

Further, "the trial court properly instructed the jury on the law, and we presume the jury followed those instructions. Indeed, the jury was instructed that, to the extent the law as given by the trial court conflicted with the description of the law as given by the attorneys, the jury was to follow the court's instructions." (*People v. Boyette* (2002) 29 Cal.4th 381, 436.)

Defendant's reliance on *People v. Beltran* (2013) 56 Cal.4th 935 (*Beltran*), is misplaced. In *Beltran*, our Supreme Court "clarif[ied] what kind of provocation will suffice to constitute heat of passion and reduce a murder to manslaughter." (*Id*. at p. 938.) The court then turned to the instructions that had been given. Our Supreme Court disagreed with the court of appeal's conclusion that the instructions were ambiguous as written, but stated "the parties' closing arguments muddied the waters on this point" and "may have confused the jury's understanding of the court's instructions." (*Id*. at pp. 954, 955.) However, our Supreme Court concluded that because of the trial court's clarifying instruction, which was given in response to a jury question, "it was not reasonably probable that any possible ambiguity engendered by counsel's argument misled the jury." (*Id*. at p. 956.) *Beltran* did not address whether the prosecutor's argument constituted misconduct and did not hold the trial court had a sua sponte duty to clarify those comments. (*Id*. at p. 954, fn. 15.) *Beltran* addressed a claim of instructional error. (*Ibid*.)

The instruction given here was not arguably misleading or ambiguous on whether there were two separate elements of intent and motivation. At worst, the argument of

counsel was ambiguous, but we cannot conclude "the argument of counsel may have introduced ambiguity" *in the instruction* sufficient to render the instruction prejudicial. (See *Beltran, supra*, 56 Cal.4th at p. 957.) Defendant's claims regarding the prosecutor's closing argument are without merit.

## C. Sufficiency of the Evidence

Defendant raises two separate challenges to the sufficiency of the evidence to support his convictions. " 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence . . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility.' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)

Defendant contends there was insufficient evidence to establish he intended to engage in sexual conduct with a minor as required for both counts. He also asserts the evidence was insufficient to establish the motivation element as to count 1. These claims are related because defendant acknowledges "a defendant's conduct may suffice to support a reasonable inference that sexual interest in a specific child is demonstrative of general sexual interest in children," but argues the evidence was inadequate to demonstrate he "was actually motivated by a sexual interest in [Brian] at all." We conclude there was substantial evidence from which the jury could determine defendant intended to engage in sexual conduct with a minor and was motivated by an unnatural or

15

abnormal sexual interest in children. After learning Brian's age, defendant expressed concern about being caught and quickly agreed to a meeting after Brian appeared to end the conversation. Brian specified he only wanted to meet "to blow each other or have some sex," and defendant replied that Brian "won't be disappointed." This evidence was sufficient to support both offenses. (See *Fromuth, supra*, 2 Cal.App.5th at p. 105 ["The jury could have reasonably concluded that the fact that a 30-year-old man makes arrangements for a sexual rendezvous with a stranger he believes to be 15 years old demonstrates that he has an unnatural and abnormal sexual interest in children"].) Defendant argues he never agreed to any explicit sexual behavior and was deliberately vague. The jury was not required to interpret the assertion "[y]ou *won't* be disappointed" ambiguously. (Italics added.) Additionally, the officer testified suspects usually do not clearly state an interest in having sex with the underage person. Further, we may not reevaluate defendant's credibility. There was substantial evidence from which the jury could have concluded defendant harbored the requisite motivation and specific intent to support both offenses and was merely being somewhat careful to conceal them in case he was caught. Defendant's substantial evidence claims are without merit.

D.    *Defendant's Statement Regarding His Son*

       1.    *Trial Court Proceedings*

       As set forth above, the officer testified that defendant initially told him, " 'I know what this is about, and I didn't do anything. My son just got arrested for the same thing, so I know better.' " Before trial, defense counsel filed a motion in limine seeking to preclude "information that defendant's son may have been caught up in some unrelated incident" as irrelevant.

       At the hearing on the motion, defense counsel argued the statement had limited probative value because defendant made a fuller statement later and should be excluded because it would distract the jury from the issues in the case. The prosecutor argued the statement was probative and went to defendant's state of mind: "[I]t goes to show that he

16

understands that what he was doing was illegal and wrong at that time, the fact that his mind immediately goes to that kind of a scenario."

The court determined the potential for distracting or misleading jurors was "very slight," and defendant would not be unduly prejudiced by an allegation against his son. The court admitted the statements because they "arguably demonstrate a state of mind and a knowledge that his behavior may be criminal."

During closing, the prosecutor argued defendant's statement showed "he knows exactly what he was doing. He knew he was there, and he knew he was there for an inappropriate and illegal purpose. This was not an individual trying to help a young kid."

    2.    *Analysis*

Defendant argues the trial court's admission of the evidence was erroneous under Evidence Code sections 350 and 352 because it was irrelevant and had the potential to confuse the jury and bias the jury. We disagree.

Under Evidence Code section 350, "[n]o evidence is admissible except relevant evidence." " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness . . . , having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) The trial court may not admit irrelevant evidence, but it has broad discretion in determining whether evidence is relevant. (*People v. Babbitt* (1988) 45 Cal.3d 660, 681.) "When an objection to evidence is raised under Evidence Code section 352, the trial court is required to weigh the evidence's probative value against the dangers of prejudice, confusion, and undue time consumption. Unless these dangers 'substantially outweigh' probative value, the objection must be overruled." (*People v. Cudjo* (1993) 6 Cal.4th 585, 609.) " 'Prejudice,' as used in Evidence Code section 352, is not synonymous with 'damaging.' [Citation.] Rather, it refers to evidence that uniquely tends to evoke an emotional bias against the defendant as an individual, and has little to do with the legal issues raised in the trial." (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1095.) "A trial

17

court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation]." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

The trial court correctly concluded the entire statement was relevant and could suggest a consciousness of guilt. Defendant's knowledge that meeting a minor under these circumstances could subject him to arrest helped explain his cautiousness, but also made less believable defendant's later explanation that he decided to meet Brian in person to warn him of the dangers of his behavior. Defendant argues his defensiveness was equally consistent with his theory of the case as it was with the prosecution's theory of the case. That defendant's statements were open to interpretation went to the weight of the evidence, not its admissibility. Admissibility of evidence as a manifestation of consciousness of guilt does not require complete unambiguity. (*People v. Ochoa* (2001) 26 Cal.4th 398, 438, abrogated on another point as noted in *People v. Prieto* (2003) 30 Cal.4th 226, 263, fn. 14.)

"Our intervention is only warranted when 'the probative value of the [evidence] clearly is outweighed by [its] prejudicial effect.' " (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1176.) We cannot conclude this is such a case. The references to the defendant's son's arrest were brief, no further information was given regarding what the son did or what the outcome of the arrest was, and none of the evidence at trial suggested defendant and his son acted together. The prejudice defendant is suggesting would require the jury to assume his son actually committed a similar crime, and for us to assume this evoked a bias against defendant based on "his family's propensity to commit sexual offenses." The prosecution made no such suggestion to the jury, and defendant cites no authority excluding evidence based on these concerns. The trial court did not abuse its discretion in admitting defendant's statement.

*E.      Section 288.3*

Section 288.3, subdivision (a) provides that "[e]very person who contacts or communicates with a minor, or attempts to contact or communicate with a minor, who knows or reasonably should know that the person is a minor, with intent to commit an offense specified in Section 207, 209, 261, 264.1, 273a, 286, 287, 288, 288.2, 289, 311.1, 311.2, 311.4 or 311.11, or former Section 288a, involving the minor shall be punished by imprisonment in the state prison for the term prescribed for an attempt to commit the intended offense." Defendant contends his conviction for count 2 must be reversed because a violation of section 288.3 requires an actual minor victim. It does not. (*People v. Korwin* (2019) 36 Cal.App.5th 682, 688.) "[F]actual impossibility is not a defense to the crime of attempt," and "[b]ecause the term 'attempt' has acquired a 'peculiar and appropriate meaning in law,' it 'must be construed' according to that meaning." (*People v. Moses* (2020) 10 Cal.5th 893, 900, 903) Because "section 288.3, subdivision (a), incorporates attempt into the crime itself and allows conviction for knowledge less than actual knowledge," the absence of an actual minor is not a defense. (*Korwin*, *supra*, at pp. 688, 689.) This interpretation is consistent with and advances the purposes of the statute. (*Id*. at p. 689; see also *Moses, supra,* at pp. 910-911 [noting defendant's interpretation would require law enforcement to use actual minors in sting operations in order to obtain maximum punishment].) Defendant's argument relies on *People v. Shields* (2018) 23 Cal.App.5th 1242, which construed a different statute that includes attempt to require an actual minor victim. *Shields* was recently disapproved by our Supreme Court on this point. (*Moses, supra*, at p. 913, fn. 13.) By contrast, defendant asks us to conclude *Korwin* was wrongly decided. *Korwin*, however, was relied on with approval by our Supreme Court in the same opinion. (See *Moses, supra*, at pp. 903-905.) We must conclude the law is settled that a violation of section 288.3 does not require an actual victim.

19

*F.     Fines and Fees*

At sentencing, the trial court ordered defendant to pay various fees and fines including a $300 restitution fine (§ 1202.4, subd. (b)); a $300 parole revocation restitution fine, suspended pending successful completion of parole (§ 1202.45); an $80 court operations assessment (§ 1465.8); a $60 court facilities assessment (Gov. Code, § 70373); a $200 base fine (§ 672); a $200 state penalty assessment (§ 1464, subd. (a)); a $20 DNA fund penalty assessment (Gov. Code, § 76104.6); an $80 state-only DNA fund penalty assessment (Gov. Code, § 76104.7); a $100 state court construction penalty assessment (Gov. Code, § 70372, subd. (a)(1)); a $140 county penalty assessment (Gov. Code, § 76000, subd. (a)(1)); and a $40 state criminal fine surcharge (§ 1465.7, subd. (a)).  Defendant contends his trial counsel rendered ineffective assistance by not objecting to these amounts or requesting a hearing on his ability to pay them.

Defendant's argument is based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).  The *Dueñas* court held "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under . . . section 1465.8 and Government Code section 70373." (*Id*. at p. 1164.)  The *Dueñas* court also held "that although . . . section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Ibid*.)  *Dueñas* did not address any of the other fines and fees at issue here.  Regardless, even if we assume its logic extends to each of them, that logic is incorrect.

Our Supreme Court is now poised to resolve this question, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844, which agreed with the court's conclusion in *Dueñas* that due process requires the trial

20

court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments under section 1465.8 and Government Code section 70373, but not restitution fines under section 1202.4. (*Kopp*, *supra*, at pp. 95-96.)

In the meantime, we join those authorities that have concluded the principles of due process do not require determination of a defendant's present ability to pay before imposing the fines and assessments discussed in *Dueñas*. (*People v. Kingston* (2019) 41 Cal.App.5th 272, 279-282; *People v. Hicks* (2019) 40 Cal.App.5th 320, 326-329, rev. granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1068-1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.) Having done so, we reject defendant's *Dueñas* challenge and his derivative claim of ineffective assistance of counsel. (*People v. Kipp* (1998) 18 Cal.4th 349, 377 [failure to assert a meritless argument does not demonstrate ineffective assistance of counsel].)

## G.      *Probation*

While this appeal was pending, section 1203.1, subdivision (a), was amended to limit, with certain exceptions not applicable here, the term of probation for a felony conviction to two years. (Stats. 2020, ch. 328, § 2.) The parties agree that this change applies retroactively to defendant and that he is entitled to resentencing on his probation term consistent with this change. We agree and will remand for resentencing. (*People v. Lord* (2021) 64 Cal.App.5th 241, 246.)

## III. DISPOSITION

The judgment is affirmed as to defendant's conviction and reversed as to defendant's sentence. The case is remanded for resentencing consistent with the amendment to Penal Code section 1203.1.

/S/

_____

RENNER, J.

We concur:

/S/

_____

BLEASE, Acting P. J.

/S/

_____

MURRAY, J.